1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHELLE PATTERSON,                        No.  2:23-cv-00635 AC

12              Plaintiff,

13        v.                                     ORDER

14   COMMISSIONER OF SOCAIL
     SECURITY,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20   Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income

21   ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]  For

22   the reasons that follow, the court will GRANT plaintiff's motion for summary judgment, and

23   DENY the Commissioner's cross-motion for summary judgment.  The case is remanded to the

24   Commissioner for further proceedings.

---

25   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
26   York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
     § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
27   Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental
     Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
28   children, whose income and assets fall below specified levels . . .").

1       I.  PROCEDURAL BACKGROUND

2           On July 27, 2020, plaintiff applied for Disability Insurance Benefits (DIB) and

3   Supplemental Security Income (SSI) under Titles II and XVI, respectively, of the Social Security

4   Act (Act), alleging disability beginning June 15, 2020.  Administrative Record ("AR") 243, 247-

5   48.[2]  The applications were disapproved initially and on reconsideration.  AR 102, 103, 150, 151.

6   On January 10, 2022, ALJ Matilda Surh presided over the hearing on plaintiff's challenge to the

7   disapprovals.  AR 32-47 (transcript).  Plaintiff appeared with her counsel, Roopen Parekh, and

8   testified at the hearing.  AR 32.  Vocational Expert Linda Ferra also testified.  Id.

9           On March 4, 2022, the ALJ issued an unfavorable decision, finding plaintiff "not

10  disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and

11  Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 12-26 (decision),

12  27-31 (exhibit list).  On February 17, 2023, after receiving a Request for Review of Hearing as an

13  additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's

14  decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision).

15          Plaintiff filed this action on April 5, 2023.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).

16  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 9.  The parties' cross-

17  motions for summary judgment, based upon the Administrative Record filed by the

18  Commissioner, have been fully briefed.  ECF Nos.  11 (plaintiff's summary judgment motion), 15

19  (Commissioner's summary judgment motion); 16 (plaintiff's reply).

20      II.  FACTUAL BACKGROUND

21          Plaintiff was born in 1969, and accordingly was 51 years old on the alleged disability

22  onset date, making her a "person closely approaching advanced age" under the regulations.

23  AR 20, 189; see 20 C.F.R §§ 404.1563(d), 416.963(d) (same).  Plaintiff has some college

24  education and can communicate in English.  AR 294-95.  Plaintiff has work history as a server at

25  a county club and as a preschool teacher.  AR 296.  Plaintiff alleged disability based on spinal

26  stenosis, fibromyalgia, sciatica, degenerative disc disease, arthritis, depression, anxiety, and

27  insomnia.  AR 295.

28  _____

[2]  The AR is electronically filed at ECF No. 10.

1

III.  LEGAL STANDARDS

2

The Commissioner's decision that a claimant is not disabled will be upheld "if it is

3

supported by substantial evidence and if the Commissioner applied the correct legal standards."

4

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

5

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

6

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

7

Substantial evidence is "more than a mere scintilla," but "may be less than a

8

preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

9

evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

10

Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

11

record can constitute substantial evidence, only those 'reasonably drawn from the record' will

12

suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

13

Although this court cannot substitute its discretion for that of the Commissioner, the court

14

nonetheless must review the record as a whole, "weighing both the evidence that supports and the

15

evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

16

846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

17

court must consider both evidence that supports and evidence that detracts from the ALJ's

18

conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

19

"The ALJ is responsible for determining credibility, resolving conflicts in medical

20

testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

21

Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

22

which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

23

278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

24

ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

25

v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

26

2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

27

evidence that the ALJ did not discuss").

28

////

1    The court will not reverse the Commissioner's decision if it is based on harmless error,

2    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

3    ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

4    2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

5    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

6                                    IV.  RELEVANT LAW

7    Disability Insurance Benefits and Supplemental Security Income are available for every

8    eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is

9    "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

10   determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

11   (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

12   The Commissioner uses a five-step sequential evaluation process to determine whether an

13   applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

14   Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

15   process to determine disability" under Title II and Title XVI).  The following summarizes the

16   sequential evaluation:

17
18           Step one: Is the claimant engaging in substantial gainful activity?  If
             so, the claimant is not disabled.  If not, proceed to step two.

19   20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

20
21           Step two: Does the claimant have a "severe" impairment?  If so,
             proceed to step three.  If not, the claimant is not disabled.

22   Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

23
24           Step three: Does the claimant's impairment or combination of
             impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
25           Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to
             step four.

26   Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

27
28           Step four: Does the claimant's residual functional capacity make him
             capable of performing his past work?  If so, the claimant is not
             disabled.  If not, proceed to step five.

4

1  Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

2          Step five: Does the claimant have the residual functional capacity
            perform any other work?  If so, the claimant is not disabled.  If not,
3          the claimant is disabled.

4  Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

5          The claimant bears the burden of proof in the first four steps of the sequential evaluation

6  process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

7  disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the

8  sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

9  disabled and can engage in work that exists in significant numbers in the national economy."  Hill

10  v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

11                              V.  THE ALJ's DECISION

12          The ALJ made the following findings:

13          1. The claimant meets the insured status requirements of the Social
            Security Act through December 31, 2025.
14

15          2. [Step 1] The claimant has not engaged in substantial gainful
            activity since June 15, 2020, the alleged onset date (20 CFR
16          404.1571 et seq., and 416.971 et seq.).

17          3. [Step 2] The claimant has the following severe impairments:
            degenerative disc disease of the cervical and lumbar spine, knee
18          osteoarthritis, major depressive disorder, and general anxiety
            disorder (20 CFR 404.1520(c) and 416.920(c)).

19          4. [Step 3] The claimant does not have an impairment or combination
            of impairments that meets or medically equals the severity of one of
20          the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
            (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and
21          416.926).

22          5. [Preparation for Step 4] After careful consideration of the entire
            record, I find that the claimant has the residual functional capacity to
23          perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
            except she can lift/carry 20 pounds occasionally and 10 pounds
24          frequently; sit, stand, and walk 6 hours in an 8-hour day; frequently
            climb ramps and stairs; frequently stoop; and occasionally kneel,
25          crouch, and crawl. Mentally, she is limited to noncomplex and
            routine tasks that do not require a great deal of social interaction,
26          maintain an ordinary routine, and make decisions consistent with
            said tasks.
27

28          6. [Step 4] The claimant is unable to perform any past relevant work
            (20 CFR 404.1565 and 416.965).

                              5

7. [Step 5] The claimant was born on [in 1969] and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 17-26. As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 26.

## VI.   ANALYSIS

Plaintiff alleges that (1) the ALJ failed to provide clear and convincing reasons for discounting plaintiff's allegations of pain and dysfunction; (2) the ALJ failed to properly evaluate the medical opinion from Charles Odipo, Ed.D.; (3) The ALJ failed to properly evaluate the prior administrative medical findings from Leslie E. Montgomery, Ph.D. and L. Colsky, M.D.; (4) the ALJ's residual functional capacity finding was vague and was not supported by substantial evidence; and (5) the ALJ failed to evaluate the lay witness statements from plaintiff's sister, son, and daughter.

A.  Plaintiff's Subjective Pain Testimony

Plaintiff alleges the ALJ erred by rejecting her subjective pain testimony without providing adequate rationale.  An ALJ performs a two-step analysis to evaluate a claimant's testimony.  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citations omitted).  First, the ALJ must evaluate the objective medical evidence of the underlying impairment which could be

6

1    reasonably expected to cause the alleged symptoms or pain, and second, if there is no evidence of

2    malingering, the ALJ can reject the claimant's testimony as to the symptoms' severity by offering

3    specific, clear, and convincing reasons.  Id. at 1015 (citations omitted).  Inconsistent testimony

4    and complaints inconsistent with plaintiff's daily activities are specific, clear, and convincing

5    reasons to discount a claimant's testimony.  Frost v. Berryhill, 727 Fed. Appx. 291, 295 (9th Cir.

6    2018) (citations omitted).  Ninth Circuit cases "do not require ALJs to perform a line-by-line

7    exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when

8    denying benefits."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).  Instead, an ALJ must

9    make specific findings about a claimant's allegations, properly supported by the record and

10   sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's

11   subjective testimony.  See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

12        In this case, plaintiff wrote in her function report that her impairments impact her ability

13   to lift, squat, bend, stand, reach, walk, sit, kneel, stair-climb, and concentrate.  AR 334.  She

14   testified at her hearing that she walked with a limp and is not able to sit or stand for long periods

15   of time due to pain from her spinal stenosis and degenerative disc disease.  AR 37.  Plaintiff

16   stated was able to stand or walk for 5 minutes before she needed a sitting break for 30 minutes.

17   AR 39.  Plaintiff underwent injections in her back, knee, and neck.  AR 37-38, 41.  The injections

18   "took the edge off" the pain but they did not resolve plaintiff's pain.  AR 38.  Similarly, her pain

19   medication did not resolve her pain.  AR 38.  Plaintiff testified that she wore a back brace in her

20   house and used a shower chair.  AR 39, 40.  She was not able to drive beyond her immediate

21   town.  AR 39.  Plaintiff stated her hands went numb about 80% of the time, and that she needed

22   to lie down most of the day.  AR 41-42.  Plaintiff stated she stopped working as a teacher because

23   she kept falling asleep due to her fatigue and her medications.  AR 40.  Due to her medication,

24   she experienced constipation, dizziness, headache, insomnia, blurred vision, restlessness,

25   drowsiness, dry mouth, and difficulty concentrating.  AR 42.

26        The ALJ discredited plaintiff's subjective pain testimony, concluding that plaintiff's

27   "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

28   entirely consistent with the medical evidence and other evidence in the record[.]"  20 C.F.R. §

7

404.1529(c)(2) (objective medical evidence is useful in assessing symptoms); Carmickle v. Comm'r Soc. Sec. Admin. 533 F.3d 1155, 1161 (9th Cir. 2008); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits").  AR 21.  The ALJ cited portions of the record demonstrating mild findings, and notations that treatment was effective with respect to controlling plaintiff's pain and reducing mobility problems.  For example, the ALJ noted that in August 2020, plaintiff reported that her injections provided 75% pain reduction, and her medications helped take the edge off her pain.  AR 22, 802. In June 2021, she reported 80% improvement with her low back pain and reported that her pain was well managed with her medication regimen, with no side effects.  AR 22, 1018.  She had full range of motion in all joints and a normal gait by August 2021.  AR 22, 1132.  In November 2021, she exhibited full range of motion in her neck and back.  AR 22, 1171.  She also displayed full range of motion in her hips, elbows, ankles, wrists, and shoulders.  AR 22, 1170.  General musculoskeletal exams demonstrated grossly normal range of motion and strength without tenderness.  AR 22, 1235, 1278.  She exhibited a normal gait, or providers noted that she was negative for a gait disturbance.  AR 22, 514, 664 (noting knee pain but that plaintiff declined physical therapy), 1004, 1069, 1132.  Her balance was intact (AR 22, 1282 1357, 1384) and she had normal range of motion in her knees despite some pain, which she declined treatment for (AR 22, 664).  She was not in acute distress at appointments, which is inconsistent with the alleged frequency and severity of her pain.  AR 22, 664, 1131, 1384.

Testimony that contradicts "the medical record is a sufficient basis for rejecting the claimant's subjective testimony." 20 C.F.R. § 404.1529(c)(2) (objective medical evidence is useful in assessing symptoms); Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits").  Plaintiff argues that the ALJ's analysis did not meet the required legal standards because the ALJ failed to explain how the medical evidence "failed to support" plaintiff's allegations.  ECF No. 11 at 15.  Plaintiff specifically notes that the ALJ's

review of the medical evidence did not clearly undermine plaintiff's testimony regarding her alleged limitation of standing and walking for five minutes at most before needing a 30-minute sitting break, or her testimony that is fatigued and needs to lie down most of the day.  As to pain, the court finds that the ALJ adequately explained how the medical record undermined plaintiff's subjective testimony, pointing to specific instances in the record where plaintiff's pain was well controlled with treatment.  As to fatigue, the court agrees with plaintiff that the ALJ did not clearly cite treatment records to undermine plaintiff's testimony.  The ALJ did, however, find that this testimony was contradicted by plaintiff's activities of daily living.

The ALJ reasonably found plaintiff's subjective allegations regarding her fatigue and pain to be inconsistent with her daily activities.  AR 23, 20 C.F.R. § 404.1529(c)(3)(i); Smartt, 53 F.4th at 499 ("An ALJ may also consider whether the claimant engages in daily activities inconsistent with the alleged symptoms") (quotation omitted).  In April 2021, plaintiff reported that she would be traveling outside of the United States for a week.  AR 934, 1285.  In June 2021, records indicated that she would be going to Cancun in the last week of July, and she had been swimming at her parents' pool and taking care of chores around the house.  AR 973, 1404.  In August 2021, she reported that she had been swimming regularly and as much as possible.  AR 1409, 1413.  In September 2021, she reported that she was taking care of her father and that her back pain was manageable, she reported that she had been helping her mother regularly and was starting to walk regularly.  AR 1417, 1421.  Moreover, November 2021 records indicate that she was caring for both parents.  AR 1425.

Daily activities, even if they are not commensurate with work activity, may demonstrate that a plaintiff's subjective complaints are exaggerated.  See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (while daily activities "did not suggest [plaintiff] could return to his old job [they] did suggest that [plaintiff's] later claims about the severity of his limitations were exaggerated").  Even if plaintiff's activities were not consistent with full-time work, the salient point is that they were inconsistent with the severity of the symptoms she alleged, particularly her allegations of fatigue and needing to lie down all day.  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

1  that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d

2  1104, 1113 (9th Cir. 2012) superseded on other grounds by 20 C.F.R. § 404.1502(a).  Because the

3  court finds that the ALJ gave at least two adequate reasons for discrediting plaintiff's subjective

4  testimony, there is no error on this point.

5         B.  Medical Opinion Testimony

6        Plaintiff asserts that the ALJ did not properly evaluate the medical opinion from treating

7  physician Dr. Charles Odipo, Ed.D. because she found the opinion was not persuasive but did not

8  include a well-supported rationale, and because she did not properly address the consistency and

9  supportability factors.  ECF No. 11 at 19.  Plaintiff also asserts that the prior administrative

10  medical findings ("PAMFs") of state agency consultants Leslie E. Montgomery, Ph.D., and L.

11  Colsky, M.D. were treated improperly by the ALJ.  Id. at 22-24.  With respect to medical

12  opinions, new regulations apply to claims filed on or after March 27, 2017, which changed the

13  prior framework for evaluation of medical opinion evidence.  Revisions to Rules Regarding the

14  Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

15  C.F.R. § 404.1520c.  The 2017 regulations provide that the ALJ will no longer "give any specific

16  evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the

17  persuasiveness of all medical opinions or prior administrative medical findings from medical

18  sources and evaluate their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg.

19  5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b).

20        The factors for evaluating the persuasiveness of a physician opinion include

21  supportability, consistency, relationship with the claimant (including length of the treatment,

22  frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of

23  an examination), specialization, and "other factors that tend to support or contradict a medical

24  opinion or prior administrative medical finding" (including, but not limited to, "evidence showing

25  a medical source has familiarity with the other evidence in the claim or an understanding of our

26  disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

27  Supportability and consistency are the most important factors, and therefore the ALJ is required

28  to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and

10

1  consistency are defined in the regulations as follows:

2  > Supportability. The more relevant the objective medical evidence
3  > and supporting explanations presented by a medical source are to
   > support his or her medical opinion(s) or prior administrative medical
   > finding(s), the more persuasive the medical opinions or prior
4  > administrative medical finding(s) will be.
5  > Consistency. The more consistent a medical opinion(s) or prior
   > administrative medical finding(s) is with the evidence from other
6  > medical sources and nonmedical sources in the claim, the more
   > persuasive the medical opinion(s) or prior administrative medical
7  > finding(s) will be.

8  20 C.F.R. § 404.1520c(c)(1)-(2).

9       The ALJ may, but is not required to, explain how the other factors were considered.  20

10  C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative

11  findings "about the same issue are both equally well-supported ... and consistent with the record

12  ... but are not exactly the same," the ALJ must explain how "the other most persuasive factors in

13  paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).  The Ninth

14  Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule"

15  and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or

16  "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  Woods v.

17  Kijakazi, 32 F.4th 785 (9th Cir. 2022).  Still, in rejecting any medical opinion as unsupported or

18  inconsistent, an ALJ must provide an explanation supported by substantial evidence.  Id.  In sum,

19  the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from

20  each doctor or other source ... and 'explain how [he or she] considered the supportability and

21  consistency factors' in reaching these findings."  Id. (citing 20 C.F.R. §§ 404.1520c(b),

22  404.1520(b)(2)).

23       1.  The Medical Opinion of Dr. Opido

24       On December 29, 2020, plaintiff underwent a psychological consultative examination

25  with Charles Odipo, Ed.D.  AR 880.  Plaintiff reported depression, anxiety, and an obsessive-

26  compulsive disorder.  Id.  Her mental symptoms worsened after she developed numerous physical

27  ailments.  Id.  She reported being often fatigued and foggy, and needing to sleep during the day

28  Id.  Plaintiff reported crying spells, sadness, irritability, worry, nervousness, forgetfulness,

1   impaired concentration, impaired memory, lack of focus and panic attacks.  Id.  Plaintiff's

2   symptoms were severe and occurred daily.  AR 880.  She had no homicidal ideation but had

3   violent thoughts towards others.  Id.  Plaintiff was increasingly isolative due to her pain and

4   depression.  Id.  She had difficulty completing household chores due to her pain.  Id.  On exam,

5   Dr. Odipo noted plaintiff appeared sad when talking about her medical and financial problems.

6   Id.  She had a dysphoric mood and an anxious affect.  AR 882.  Her attention was mildly

7   impaired, and her motor activity was moderately impaired.  Id.  Dr. Odipo opined that plaintiff

8   was limited to one or two step simple repetitive tasks; was moderately limited in her ability to

9   accept instructions from supervisors and interact with coworkers and the public; was severely

10  limited in her ability to maintain regular attendance in the workplace; and was severely limited in

11  her ability to handle normal work-related stress from a competitive work environment.  AR  882.

12          2.   The ALJ's Analysis of Dr. Odipo

13          The ALJ rejected the medical opinion of Dr. Odipo. AR 24.  The ALJ reasoned that (1) he

14  "relied upon the claimant's depressive and anxiety symptoms when making [his] assessments,"

15  and (2) "the longitudinal evidence of record established no more than moderate mental

16  restrictions."

17          As to the ALJ's first rationale, the undersigned agrees that the ALJ erred.  Psychologists

18  "should not be rejected simply because of the relative imprecision of the psychiatric

19  methodology."  Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing Blankenship v.

20  Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989)).  "Psychiatric evaluations may appear subjective,

21  especially compared to evaluation in other medical fields" as "[d]iagnoses will always depend in

22  part on the patient's self-report, as well as on the clinician's observations of the patient.  But such

23  is the nature of psychiatry."  Id.  As such, the Ninth Circuit held that "the rule allowing an ALJ to

24  reject opinions based on self-reports does not apply in the same manner to opinions regarding

25  mental illness."  Id.  The Commissioner does not address this issue in opposition.  The court

26  concludes that the ALJ's analysis on this point was erroneous because it improperly rejected the

27  psychiatric medical opinion as based on plaintiff's self-reports.

28  ////

As to the second rationale, the undersigned again agrees with plaintiff that the ALJ erred. The ALJ rejected Dr. Odipo's opinion on grounds that "the longitudinal evidence of record established no more than moderate mental restrictions." AR 24. However, Dr. Odipo's opinion provided for moderate mental restrictions. For example, Dr. Odipo opined that plaintiff was moderately limited in her ability to accept instructions from supervisors and interact with coworkers and the public. AR  882. The ALJ's finding that the evidence "established no more than moderate mental restrictions" provides no basis for rejecting Dr. Odipo's entire opinion. The ALJ did not clearly incorporate any moderate limitations in plaintiff's ability to accept instructions from supervisors or interact with coworkers into the residual functional capacity finding (see AR 20: "Mentally, she is limited to noncomplex and routine tasks that do not require a great deal of social interaction, maintain an ordinary routine, and make decisions consistent with said tasks."). Because the ALJ found that the record supported moderate mental limitations, but still rejected Dr. Odipo's entire opinion without incorporating even the assessed moderate limitations in the RFC, the ALJ's rationale was in error.

### 3.   The Medical Opinions of Drs. Montgomery & Colsky

On May 18, 2021, State agency consultant Leslie E. Montgomery, Ph.D., reviewed plaintiff's medical record and found Plaintiff was able to concentrate and persist with simple, routine tasks that did not require a great deal of social interaction; maintain an ordinary routine; make simple work like decisions; interact with the public for brief periods or infrequently; and needed assistance in adapting to change, unless the change was infrequent or implemented gradually. AR 68-70, 95-97. On August 10, 2021, State agency consultant L. Colsky, M.D., reviewed plaintiff's medical record and agreed with Dr. Montgomery's findings. AR 120-22, 143-45.

### 4.   The ALJ's Analysis of Drs. Montgomery & Colsky's Opinions

The ALJ found the limitations detailed by Drs. Montgomery and Colsky were persuasive because they were supported by their own narrative explanations, and they were consistent with the longitudinal record that demonstrated moderate mental limitations. AR 24. However, despite finding the assessed limitations from Drs. Montgomery and Colsky were persuasive, the ALJ

1  failed to incorporate several of the limitations assessed in their opinions into the RFC, without

2  explanation.  As noted above, Drs. Montgomery and Colsky found plaintiff was only able to

3  interact with the public for brief periods or infrequently and needed assistance in adapting to

4  change, unless the change was infrequent or implemented gradually.  AR 69-70, 96-97, 121-22,

5  144-45.  The ALJ's residual functional capacity finding, on the other hand, did not include any

6  limitation regarding plaintiff's need for help in adapting to change.  AR 20.  Further, the ALJ

7  only limited plaintiff to not "a great deal of social interaction" (AR 20); this limitation is vague

8  (as discussed further below) and does not appear as restrictive as the finding from Drs.

9  Montgomery and Colsky that limited plaintiff to only brief periods of interaction with the public

10 or infrequent interaction with the public.  Agency policy mandates that "[i]f the RFC assessment

11 conflicts with an opinion from a medical source, the adjudicator must explain why the opinion

12 was not adopted."  SSR 96-8p.  Here, the ALJ did not explain why she did not adopt all the

13 findings from Drs. Montgomery and Colsky, and therefore erred.

14          C.  Residual Functional Capacity Assessment

15          Plaintiff argues that the social limitations assigned by the ALJ were vague and

16 unsupported, specifically the statement that plaintiff is limited to work that does "not require a

17 great deal of social interaction."  ECF No. 11 at 24; AR 20.  A claimant's residual functional

18 capacity is an assessment of "the extent to which an individual's medically determinable

19 impairment(s), including any related symptoms, such as pain, may cause physical or mental

20 limitations or restrictions that may affect his or her capacity to do work-related physical and

21 mental activities."  Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing SSR 96-8p).

22 It "is the most [a claimant] can still do despite [his or her] limitations."  Id., citing 20 C.F.R. §

23 416.945(a)(1)).  The "scope of the RFC plays a crucial role in the ALJ's determination of whether

24 an individual is disabled and entitled to benefits under the Social Security Act."  Id.

25          The court finds that a limitation of "less than a great deal of social interaction" is vague

26 and undefined.  It is not clear if "less than a great deal" means occasional, or frequent, or

27 something else entirely.  See Correia v. Commr of Soc. Sec., No. 2:20-cv-01139-JDP-SS, 2023

28 WL 2058894, at *7, 2:20-cv-01139-JDP, 2023 U.S. Dist. LEXIS 26482 (E.D. Cal. Feb. 16, 2023)

1  ("occasionally' and 'frequently' are terms of art under the Social Security regulations:

2  occasionally means 'very little up to one-third of the time'; frequently means 'from one-third to

3  two-thirds of the time.'")  It is also unclear in the RFC what type of social interaction the ALJ is

4  referring to.  Is the limitation applicable to superficial interactions or teamwork?  Does the

5  limitation pertain to supervisors, coworkers, the public, or all these?  The lack of clarity in the

6  limitation makes in impossible to assess whether the employment opportunities assessed are truly

7  available to plaintiff.  The court finds error.

8         D.  Lay Witness Opinions

9         Plaintiff argues that the ALJ erred with respect to the third-party statements provided by

10 her son, her daughter, and her sister.  ECF No. 11 at 26.  Defendant contends that under the

11 revised regulations, the ALJ was not required to discuss these statements.  Plaintiff maintains that

12 the ALJ was required to consider these reports and provide at least germane reasons for

13 discounting them.  ECF No. 16 at 4.  The court agrees with plaintiff.

14       The revised regulations differentiate "evidence we receive according to the rules

15 pertaining to the relevant category of evidence." 20 C.F.R. § 404.1513(a).  Lay witness testimony

16 fits under the category of evidence from nonmedical sources, which is evidence that the

17 adjudicator will "consider." 20 C.F.R. § 404.1513(a).  For evidence from nonmedical sources,

18 the revised regulations specify that the adjudicator is "not required to articulate how we

19 considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c)

20 [requirements for medical opinion analysis] in this section." 20 C.F.R. § 404.1520c(d).  While

21 the Ninth Circuit has yet to decide how the 2017 rule change impacts the standard applicable to

22 the ALJ's review of lay witness testimony, district courts in the circuit have concluded that the

23 ALJ is at least obligated to acknowledge the statements.  The undersigned agrees that the

24 regulations cannot be read to allow an ALJ to ignore lay witness evidence entirely or to disregard

25 such evidence for no reason whatsoever.  See Joseph M.R. v. Comm'r of Soc. Sec., Case No.

26 3:18-cv-01779, 2019 WL 4279027, at *12, 2019 U.S. Dist. LEXIS 153831 (D. Or. Sept. 10,

27 2019) ("Although § 404.1520c(d) states the Commissioner is 'not required to articulate how we

28 consider evidence from nonmedical sources' using the same criteria for medical sources, it does

1   not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his

2   reasons for discounting those statements.").  Here, the ALJ did not acknowledge the lay witness

3   opinions at all.  The ALJ erred.

4          E.   Remand

5          The undersigned agrees with plaintiff that the ALJ's errors are harmful and that remand

6   for further proceedings by the Commissioner is necessary.  An error is harmful when it has some

7   consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec. Admin.,

8   454 F.3d 1050, 1055 (9th Cir. 2006).  Here the improperly evaluated medical opinions may very

9   well result in a more restrictive residual functional capacity assessment, which may in turn alter

10  the finding of non-disability.  Further, the lack of clarity with respect to the RFC itself and the

11  ALJ's consideration of third-party opinions necessitates remand because it is unclear how the

12  disability finding may be impacted.

13         It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

14  and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

15  (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

16  Security Administration in the first instance, not with a district court").  "Remand for further

17  administrative proceedings is appropriate if enhancement of the record would be useful."

18  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly

19  consider third party opinions and medical opinions.  Further development of the record consistent

20  with this order is necessary, and remand for further proceedings is the appropriate remedy.

21                                     VII.  CONCLUSION

22         For the reasons set forth above, IT IS HEREBY ORDERED that:

23         1.  Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED on the grounds

24  set forth above;

25         2.  The Commissioner's cross-motion for summary judgment (ECF No. 15) is DENIED;

26  and

27         3.  This matter is REMANDED to the Commissioner for further consideration consistent

28  with this order; and

1      4.  The Clerk of the Court shall enter judgment for plaintiff and close this case.

2    DATED: September 17, 2024

3

4                                           ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28